## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSEPH COTELLESSA, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BRUCE A. WILLIAMSON, DAVID W. BIEGLER, THOMAS D. CLARK, JR., VICTOR E. GRIJALVA, PATRICIA A. HAMMICK, HOWARD B. SHEPPARD, WILLIAM L. TRUBECK, GEORGE MAZANEC, DYNEGY INC., DENALI PARENT, INC., DENALI MERGER SUB INC. and THE BLACKSTONE GROUP L.P.,<br><br>　　　　　　Defendants. | Case Number _____<br><br>SHAREHOLDER CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Joseph Cotellessa ("Plaintiff") by his attorneys, for his complaint against defendants, alleges upon personal knowledge as to himself, and upon information and belief as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.　　This is a shareholder class action brought by Plaintiff on behalf of himself and all other similarly situated public shareholders of Dynegy Inc. ("Dynegy" or the "Company") against the Company's Board of Directors (the "Individual Defendants"), among others, in connection with the proposed acquisition of Dynegy (the "Proposed Transaction") by The Blackstone Group L.P., ("Blackstone"), through its subsidiaries, Denali Parent, Inc. ("Parent") and Denali Merger Sub Inc.("Merger Sub") (collectively, Blackstone, Parent and Merger Sub are referred to herein as "Blackstone"). On August 13, 2010, Dynegy and Blackstone publicly

disclosed that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Blackstone will acquire Dynegy for $4.50 cash per share. The Proposed Transaction is unfair both with respect to price and process and is designed to benefit Dynegy's insiders to the detriment of Plaintiff and the Class (defined herein).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Given that the Proposed Transaction is valued at $4.7 billion, the injunctive relief sought herein will exceed a sum or value of $75,000. This action is not a collusive one to confer jurisdiction on this Court.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the defendants, including Dynegy either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District. Finally, the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

4.     Plaintiff Joseph Cotellessa is and was, at all times relevant hereto, a holder of Dynegy common stock. Plaintiff is a citizen of Massachusetts.

5.     Dynegy is a Delaware corporation headquartered at 1000 Louisiana, Suite 5800, Houston, Texas 77022. The Company's primary business is the production and sale of electric energy, capacity and ancillary services from its fleet of eighteen operating power plants in six states, totaling approximately 12,300 MW of generating capacity. Dynegy common stock is

traded on the New York Stock Exchange under the symbol "DYN."  Dynegy is a citizen of Texas.

6.      Defendant Bruce A. Williamson ("Williamson") has been a director of Dynegy since 2002, Chief Executive Officer of the Company since 2002, Chairman since 2004, and President since 2007.  Completion of the Proposed Transaction, as specifically set forth in Section 6.9 of the Merger Agreement will trigger the Company's Change in Control Plan, entitling Williamson to 2.99 times his annual compensation (annual base salary and target cash bonus), a lump sum cash payment of his target annual incentive compensation, and the immediate vesting of any unvested stock options, with an aggregate estimated value of approximately $18.7 million.  Williamson is also expected to enter into a new employment agreement with Blackstone and continue as the top executive of the Company following consummation of  the Proposed Transaction.  Williamson is a citizen of Texas and resides at 79 Wincrest Falls Drive, Cypress, Texas.

7.      Defendant David W. Biegler ("Biegler") has been a director of Dynegy since 2003.  Biegler owns a mere 10,000 shares of Dynegy common stock.  His other holdings in the Company consist of 105,623 shares of "phantom stock units" awarded under the Company's Deferred Compensation Plan for Certain Directors that will be payable upon his termination as a director in connection with the Proposed Transaction.  Biegler is a citizen of Texas and resides at 3537 Stanford Avenue, Dallas, Texas.

8.      Defendant Thomas D. Clark, Jr. ("Clark") has been a director of Dynegy since 2003.  Clark owns 13,500 shares of Dynegy common stock and 102,646 phantom stock units.  Clark is a citizen of Colorado and resides at 10382 W Remington Drive, Littleton, Colorado.

9.     Defendant Victor E. Grijalva ("Grijalva") has been a director of Dynegy since 2006.  Grijalva owns 15,000 shares of Dynegy common stock and 68,403 phantom stock units.  Grijalva is a citizen of Connecticut and resides at 32 Deerfield Road, Brookfield, Connecticut.

10.    Defendant Patricia A. Hammick ("Hammick") has been a director of Dynegy since 2003.  Hammick owns 25,000 shares of Dynegy common stock and 102,623 phantom stock units.  Hammick is a citizen of Virginia and resides at 109 Lawrence Cove Lane, Kilmarnock, Virginia.

11.    Defendant Howard B. Sheppard ("Sheppard") has been a director of Dynegy since 2008.  Sheppard owns 15,000 shares of Dynegy common stock and 53,752 phantom stock units.  Sheppard is a citizen of California and resides at 538 Blair Avenue, Piedmont, California.

12.    Defendant William L. Trubeck ("Trubeck") has been a director of Dynegy since 2003.  Trubeck owns 11,000 shares of Dynegy common stock and 105,623 phantom stock units.  Trubeck is a citizen of Minnesota and resides at 3300 Fox Street, Long Lake. Minnesota.

13.    Defendant George Mazanec ("Mazanec") has been a director of Dynegy since 2004.  Mazanec owns 3,200 shares of Dynegy common stock.  Mazaneck is a citizen of Texas and resides at 302 Fall River Ct, Houston Texas.

14.    Defendants Williamson, Biegler, Clark, Grijalva, Hammick, Sheppard, Trubeck and Mazanec are referred to herein collectively as the "Individual Defendants."

15.    Defendant Blackstone is a limited partnership headquartered at 345 Park Avenue, New York, New York 10154, with a satellite office in Texas located at 11 Greenway Plaza, Suite 3050, Houston, Texas 77046.  Blackstone is a private equity firm that specializes in investment strategies, as well as financial advisory services.  Blackstone common units representing limited partner interests are traded on the New York Stock Exchange under the symbol "BX."

4

16.     Defendant Parent is a Delaware corporation with its principal executive offices located at 345 Park Avenue, New York, New York 10154 and is an affiliate of Blackstone.

17.     Defendant Merger Sub is a wholly-owned subsidiary of Parent and is a Delaware corporation with its principal executive offices located at 345 Park Avenue, New York, New York 10154. Defendants Blackstone, Parent and Merger Sub are named herein as aiders and abettors to the breaches of fiduciary duty described herein.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

18.     By reason of the above Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of Dynegy who are being and will be harmed by the defendants' actions described herein (the "Class") and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty and full and adequate disclosure.

19.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves.  To diligently comply with this duty, the directors of a corporation may not take any action that:

A.      adversely affects the value provided to the corporation's shareholders;

B.      contractually prohibits them from complying with or carrying out their fiduciary duties;

C.      discourages or inhibits alternative offers to purchase control of the corporation or

its assets; or

D.      will otherwise adversely affect their duty to search and secure the best value

reasonably available under the circumstances for the corporation's shareholders.

20.     In accordance with their duties of loyalty and good faith, the Individual

Defendants, as directors and/or officers of Dynegy, are obligated under applicable law to refrain

from:

A.      participating in any transaction where the directors' or officers' loyalties are

divided;

B.      participating in any transaction where the directors or officers receive, or are

entitled to receive, a personal financial benefit not equally shared by the public

shareholders of the corporation; and/or

C.      unjustly enriching themselves at the expense or to the detriment of the public

shareholders.

21.     The Individual Defendants are also obliged to honor their duty of candor to

Dynegy's shareholders by, *inter alia*, providing all material information to the shareholders

regarding a scenario in which they are asked to vote or tender their shares.  This duty of candor

ensures that shareholders have all information that will enable them to make informed, rational

and intelligent decisions about whether to relinquish their shares in exchange for the

consideration offered.

22.     Plaintiff alleges herein that Individual Defendants, separately and together, in

connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary

duties, including their duties of loyalty, good faith, and independence owed to Plaintiff and other

public shareholders of Dynegy.  The Individual Defendants stand on both sides of the transaction, are engaging in self dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class.  As a result of the Individual Defendants' self dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Dynegy common stock in the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action pursuant to Rule 23 on behalf of himself and all other shareholders of the Company (except the defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest), who are, or will be, threatened with injury arising from defendants' actions, as more fully described herein.

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of August 2, 2010, there were over 120 million shares of Dynegy common stock issued and outstanding, likely owned by thousands of shareholders.

(b)     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(c)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or

adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially members or impede their ability to protect their interests.

(d)     To the extent defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable to the Class.

25.     There are questions of law and fact that are common to the Class including, *inter alia*, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of due care, good faith, and loyalty with respect to Plaintiff and the other members of the Class in connection with the conduct alleged herein;

(b)     whether the process implemented and set forth by the Individual Defendants in connection with the Proposed Transaction was fair to the members of the Class;

(c)     whether the Individual Defendants have breached their fiduciary duty of candor by failing to disclose all material facts relating to the Proposed Transaction;

(d)     whether Blackstone has aided and abetted the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the other members of the Class as a result of the conduct alleged herein; and

(e)     whether Plaintiff and the other members of the Class would be irreparably harmed if defendants are not enjoined from effectuating the transaction described herein.

26.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### SUBSTANTIVE ALLEGATIONS

28.     On August 13, 2010, Dynegy issued a press release announcing that it had entered into a definitive Merger Agreement pursuant to which Blackstone (through an investment affiliate) will acquire Dynegy for $4.50 cash per share.   The press release for the Proposed Transaction touted the purported "premium" the $4.50 cash per share price represented over the market price of Dynegy common stock, stating:

> Under the terms of the merger agreement, Dynegy shareholders will receive $4.50 in cash for each outstanding share of Dynegy common stock they own, which represents a 62 percent premium to the closing share price on August 12, 2010.
>
> "Dynegy's Board of Directors believes the proposed transaction with Blackstone provides our shareholders with a significant premium over the current stock price and removes the risks to the existing shareholders associated with volatile commodity prices, challenging capital markets and environmental and regulatory uncertainties," said Bruce A. Williamson, Chairman, President and Chief Executive Officer of Dynegy Inc. "Blackstone is a world-class firm with substantial resources and investment experience in the power generation business, and we believe they are well positioned to lead Dynegy going forward as a private company."
>
> "We share Dynegy's commitment to safety, operational reliability and environmental responsibility," said David Foley, Senior Managing Director of Blackstone.  "We look forward to working together with Dynegy's employees to realize the full potential of the company's attractive portfolio of power generation assets."

29.     The $4.50 per share agreed to in the Proposed Transaction is a woefully inadequate price, and defendants' rationale for asserting that the premium supports a fair price is unsound as Dynegy stock has been trading at depressed levels and the Company is at the bottom of a cycle that is expected to improve as the economy emerges from the current recession.

Indeed, the "premium" touted by defendants is based on the price of Dynegy common stock on August 12, 2010, that represented a 52-week low for the shares at $2.76 per share, versus a 52-week high of $13.35 per share.  A fair price cannot be based on a purported "premium" over a depressed market price and thus, the $4.50 price is unfair to shareholders.

30.     Dynegy itself has confirmed its expectations for growth in the demand for electricity with the emerging economic recovery.  For instance, in announcing first quarter financial results on May 10, 2010, Williamson commented as follows:

> "While our first quarter results continued to be impacted by lower demand, *we view the emerging economic recovery as a precursor to demand growth and potentially more favorable power pricing in the future*," said Bruce A. Williamson, Chairman, President and Chief Executive Officer of Dynegy Inc.  "In the current market environment, certain factors are beyond our control.  We nevertheless demonstrated our commitment to operating and commercializing well during the first quarter, with our diverse natural gas- and coal-fired power plants maintaining strong reliability levels during the quarter."

(Emphasis added).

31.     The potential for the Company's growth as the economy recovers was more recently seen in connection with the announcement of second quarter results on August 6, 2010. During the investor conference call following the earnings announcement, Dynegy disclosed that it was increasing its projections for 2010 by adding $175 million in increased projected cash flow from operations.

32.     The timing of the announcement of the Proposed Transaction appears designed to cap the market price of Dynegy common stock at current, depressed levels.  Indeed, Dynegy common stock traded above the $4.50 Proposed Transaction price as recently as June 24, 2010, just seven weeks prior to public disclosure of the Proposed Transaction.

33.     Defendants' effort to cap Dynegy's stock price was designed to drive a substantial number of Dynegy shareholders to sell into the market after the announcement of the Proposed Transaction, raising the market price of the Company's stock.

34.     In fact, following the announcement of the Proposed Transaction, the price of Dynegy stock traded over the consideration offered, immediately jumping to $4.53 per share, and has continued to trade between $4.74 to $4.89 per share since that time.

35.     Press reports following the announcement of the Proposed Transaction have also remarked on the inadequacy of the $4.50 per share Proposed Transaction price.  For instance, *The New York Times* reported that "**Blackstone's acquisition looks downright cheap when it is compared to the cost** of building a new power plant.  It currently costs around an average $800 a kilowatt to build a new plant, twice the price what Blackstone paid for Dynegy's generation assets.  That price is expected to increase if Congress ever passes new environmental legislation to cap carbon emissions."

36.     The Proposed Transaction also provides an immediate windfall to Blackstone, because Blackstone has already lined-up the sale of four of Dynegy's power plants to NRG Energy for $1.36 billion, representing about 32% of the Company's electricity generating capacity.  The equity value of the Proposed Transaction is only $543 million, with Dynegy continuing to hold about $4.2 billion in debt.  Thus, Blackstone pays shareholders $543 million, sells four of Dynegy's power plants to NRG for $1.36 billion, and Blackstone achieves a $817 million windfall, which means that Blackstone can fully finance the Proposed Transaction without any money down.  (Dynegy has a large debt load but there are no change-in-control provisions requiring Blackstone to pay off the loans.)  According to *The Wall Street Journal*, "Blackstone's Dynegy deal looks like a steal":

In effect, Blackstone gets Dynegy, less the assets sold to NRG, for no money down, and gets about $800 million of cash to play with.  Given Dynegy will still have a $4.2 billion net debt load on a smaller set of assets, some of that cash likely stays in the business.  But the scope for a quick dividend payment to Blackstone's investors is there.

37.    The financial unfairness of the Proposed Transaction price is compounded by the woefully deficient process undertaken by the Individual Defendants in agreeing to Proposed Transaction.

38.    Dynegy's Board is well aware of an active merger and acquisition market for the energy sector and the benefits to a seller that result from multiple, competing bidders for a target company.  Indeed, Williamson acknowledged during the second quarter conference call that "we basically are believers that the sector should consolidate and that M&A will be a part of it."

39.    Despite an opportunity for a robust process to engage multiple bidders in a sale of the Company, the Individual Defendants favored Blackstone and did not conduct an auction or reliable market check to solicit other likely potential bidders.

40.    Rather, the Individual Defendants agreed to an inadequate 40-day "go-shop" period whereby, having already committed to the Proposed Transaction at $4.50 per share and a potential termination fee of up to $50 million to Blackstone (representing 9% of the equity value of the Proposed Transaction), the Individual Defendants would proceed during the next 40 days to solicit other interest in the Company.  However, any other interested parties would effectively have to pay the termination fee to Blackstone and be faced with Blackstone's matching rights for any competing bid, all of which is designed to repel any real competition to the Proposed Transaction.

41.    Specifically, according to the terms of the Merger Agreement, during the period from August 13, 2010 and continuing until 11:59 p.m. on September 22, 2010 (the "Go-Shop

Period") the Company may solicit alternative acquisition proposals.  During that time period, the Company may terminate the Merger Agreement if the Company receives a takeover proposal that the Board determines in good faith constitutes a "Superior Proposal."   Under these circumstances, a termination fee of $16.3 million and reimbursement of expenses up to $6 million would be payable to Blackstone.  Dynegy might also be obligated to pay a termination fee of up to $50 million or up to $10 million under certain circumstances.

42.      Moreover, even if Dynegy receives a "Superior Proposal" from a third party, the Company is obligated under Section 6.2 of the Merger Agreement to give Blackstone 96 hours within which to negotiate revisions to the Proposed Transaction to avoid having the Company accept the "Superior Proposal."

43.      Further ensuring that the transaction is locked up in favor of Blackstone is the fact,that Blackstone now has unfettered access to all of Dynegy's books and records pursuant to Section 6.6 of the Merger Agreement with only limited exclusions, a right not shared by other potentially-interested parties.

44.      By agreeing to the Proposed Transaction, the Individual Defendants have initiated a process to sell the Company, which imposes heightened fiduciary responsibilities on them and requires enhanced scrutiny by the Court.  The Individual Defendants owe fundamental fiduciary obligations to the Company's shareholders to take all necessary and appropriate steps to maximize the value of their shares in implementing such a transaction.   In addition, the Individual Defendants have the responsibility to act independently so that the interests of Dynegy's shareholders will be protected, and to conduct fair and active bidding procedures or other mechanisms for checking the market to assure that the highest possible price is achieved.

45.     Dynegy represents a highly attractive acquisition candidate in light of its prospects for future growth and earnings.  The preferential treatment accorded Blackstone has deprived and will continue to deprive Dynegy's shareholders of the very substantial premium which unfettered and even-handed exposure of the Company to the market could produce.

46.     In the Proposed Transaction, Dynegy was represented by investment advisors Goldman Sachs Group Inc. ("Goldman Sachs") and Greenhill & Co. ("Greenhill").  However, there is an inherent conflict in that Goldman Sachs frequently partners with Blackstone on lucrative deals, including the acquisition of Ondea Nalco in 2003, ownership of a majority of Insphere Insurance Solutions, and more recently, are two of the advisors retained by BP plc, according to media reports.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

47.     Plaintiff repeats and realleges each and every allegation set forth herein.

48.     The Individual Defendants have violated their fiduciary duties owed to the public shareholders of Dynegy and have acted to put their personal interests ahead of the interests of Dynegy shareholders or acquiesced in those actions by fellow defendants.  These Individual Defendants have failed to take adequate measures to ensure that the interests of Dynegy's shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides Blackstone with an unfair advantage by effectively excluding other alternative proposals.

49.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Dynegy investment.  Plaintiff and other

members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

50.    The Individual Defendants have breached their duties of loyalty, entire fairness, good faith, and care by not taking adequate measures to ensure that the interests of Dynegy's public shareholders are properly protected from over-reaching by Blackstone.

51.    By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

52.    As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of Dynegy's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

53.    Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders, without providing sufficient information to enable Dynegy's public shareholders to cast an informed vote on the Proposed Transaction.

54.    The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

55.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## COUNT II

### Claim Against Blackstone for Aiding and Abetting
### the Individual Defendants' Breaches of Fiduciary Duties

56.     Plaintiff repeats and realleges each and every allegation set forth herein.

57.     The Individual Defendants breached their fiduciary duties to the Dynegy shareholders by the actions alleged *supra*.

58.     Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of defendant Blackstone, which, therefore, aided and abetted the Individual Defendants' breaches.

59.     Defendant Blackstone had knowledge that it was aiding and abetting the Individual Defendants' breaches of fiduciary duties to Dynegy shareholders.

60.     Defendant Blackstone rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to Dynegy shareholders.

61.     As a result of Blackstone's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a fair price for their shares.

62.     As a result of the unlawful actions of Blackstone, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the fair value of their equity ownership in the Company.  Unless enjoined by the Court, Blackstone will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

63.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against the defendants as follows:

A.     Certifying this case as a class action, certifying Plaintiff as class representative and his counsel as class counsel;

B.     Declaring that the conduct of the Individual Defendants in approving the Proposed Transaction and failing to negotiate in good faith with Blackstone and other acts and omissions set forth herein are breaches of the Individual Defendants' fiduciary duties;

C.     Preliminarily and permanently enjoining the Individual Defendants and all persons acting in concert with them from taking any steps to consummate the Proposed Transaction on the terms presently proposed;

D.     Preliminarily and permanently enjoining the Individual Defendants from initiating any defensive measures that would inhibit the Individual Defendants' ability to maximize value for Dynegy shareholders;

E.     To the extent the Proposed Transaction is consummated prior to this Court's entry of a final judgment, rescinding it and setting it aside or awarding rescissory damages;

F.     Directing Defendants to account to Plaintiff and the Class for all damages suffered by them as a result of defendants' wrongful conduct alleged herein;

G.     Awarding Plaintiff the costs, expenses, and disbursements of this action, including attorneys' and experts' fees and, if applicable, pre-judgment and post-judgment interest; and

H.     Awarding Plaintiff and the Class such other relief as this Court deems just, equitable, and proper.

*/s/ Gwendolyn S. Frost*
_____
Gwendolyn S. Frost
Texas Bar No.  07488750
Powers & Frost, L.L.P.
1221 McKinney Street, Suite 2400
Houston, Texas 77010-2007
Telephone: (713)767-1555
Facsimile: (713)767-1799
Web: www.powersfrost.com
E-Mail: gwenfrost@powersfrost.com

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Juan E. Monteverde
369 Lexington Ave., 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331